## BERLIN *v.* GORHAM.

The legislature has entire control over public corporations, to create, change or destroy them at pleasure ; and they are absolutely created by the act of incorporation itself, without the acceptance of the people, or any act on their part, unless otherwise provided by the act itself.

A person who is a resident of the territory incorporated as a town at the time of its incorporation, gains a settlement, though no meeting of the town is held before his removal.

A notice, signed by selectmen as such, of supplies furnished to a pauper, is sufficient, without saying overseers of the poor, if no overseers were chosen ; and there will be no variance, though the declaration allege the notice to be signed by the selectmen and overseers of the poor.

Supplies furnished for the support of those who nurse a sick pauper may be properly regarded as supplies for the support of the pauper.

If charges for supplies to a pauper are intentionally excessive, they will be disallowed wholly ; otherwise, if made too large by mistake.

If a person is taxed in a town seven years in succession, and does not pay the taxes of each year, he *does* not *gain* a settlement, though the tax unpaid is illegal. If the illegal tax is void, there is a failure to be taxed ; if only voidable, a failure to pay ; though if a part of a tax is legal, it is enough to pay that part.

ASSUMPSIT, to recover for supplies furnished for the support of Jeremiah Harding, and his wife Nancy Harding, alleged to be paupers having their settlement in Gorham.

The plaintiffs gave evidence that when Gorham was incorporated, on the 18th of June, 1836, Jeremiah Harding resided and had his home in the place which was incorporated into that town.

Berlin *v.* Gorham.

The court ruled that if he so resided, he would thereby gain a settlement in Gorham, although no legal town meeting was holden, and though no town officers were chosen, before his removal.

When the supplies were furnished, and the notice to Gorham given, the selectmen of Berlin acted as overseers of the poor, no other overseers having been chosen for that year, and they signed the notice as selectmen and not as overseers. The declaration alleged that the notice was signed " by a majority of the selectmen and overseers of the poor." The defendants objected that there was a variance between the declaration and the evidence, and that the notice was insufficient, but the court overruled both these objections.

A daughter and a grand-daughter of Nancy Harding lived in the family of the paupers, and some of the supplies furnished went into the family, and were used in common by all the members of it ; and there was evidence tending to show that part of these supplies were consumed by persons who came there on visits to the daughter. The defendants contended that this was a wasteful and improper manner of supplying the paupers, and asked the court to rule that nothing could in law be recovered for supplies so furnished. But the court ruled, and instructed the jury, that if necessary aid were in this way furnished to the paupers, though in a wasteful and prodigal manner, the plaintiffs, if there were no other objection, would be entitled to recover such sum as would be sufficient to afford the necessary support in a prudent and proper manner, and no more.

The notice charged $30 as paid to S. B. Robbins and wife for nursing, &c., and the plaintiffs also claimed in their declaration $7 as paid to Robbins and wife, for nursing, &c., after the notice. It appeared that on a settlement made after the notice, $37 were claimed by Robbins and wife for thirty-seven days' services of himself and wife in nursing, &c., but that only $35 were allowed and paid. The notice also charged $10 paid to sundry persons for watching. The evidence tended to show that only $6 had been paid on that account, and the evidence was contradictory, whether the town were liable to pay the

remaining $4. The defendant moved the court to rule that if the town had not paid or become liable to pay for more than $35 of the $37, and no more than $6 of the $10, both the charges in the notice must be rejected altogether. The court ruled and instructed the jury, that if either of those charges was made larger in the notice than the selectmen knew and understood the real claim to be, for the purpose of obtaining more of Gorham than Berlin had actually paid or become liable to pay, the whole of the charge must be rejected; but if the charge was made too large by mistake, or if, by an error in the form of the notice, the claim was charged as paid, when in fact, though the town was liable, payment had not then actually been made, the whole charge was not on that account to be rejected, but such part of it might be recovered as had been actually paid when the notice was given.

The selectmen of Berlin gave Horner & Co., traders, a general order to let Harding and family have such things as should from time to time be called for, to be carried to Harding's; and the evidence went to show that Horner & Co. delivered for that purpose whatever was called for by any member of Harding's family, or any person employed in it, and among others to Samuel B. Robbins, without any enquiry as to the necessity of the goods for the use of the paupers; and the plaintiffs charged in their account against the defendants, $26.10, for goods thus delivered by Horner & Co., on the credit of Berlin.

The defendants contended that an exorbitant amount of supplies were thus furnished by Horner & Co., under this order, and that the manner of furnishing this part of the supplies was so loose, wasteful and uncertain, that nothing ought to be recovered for that charge. The court instructed the jury that if more goods were charged to the plaintiffs by Horner & Co., as allowed under this order, than were required for the proper support of the paupers, they should allow such sum only as was necessary for the purpose, if supplied in a prudent and proper manner, and disallow the remainder.

To show that Harding gained a settlement in Berlin after he

removed to that town, the defendants offered to prove that he was assessed for his poll in Berlin for 1841 and the six succeeding years; that the tax against him in one or more of those years was not duly and legally assessed, and that he paid all the taxes assessed on him in those seven years, except the taxes for the years when they were illegally assessed. The court ruled that if a legal and also an illegal tax were assessed against him in the same year, and he paid the whole of the legal tax, that would be a sufficient assessment and payment of the tax for that year, although the illegal tax remained unpaid; but that if the whole of the tax assessed on his poll and estate for the year was illegal, and not paid, it would not be a sufficient assessment and payment of the tax for the purpose of giving him a settlement.

The defendants excepted to the foregoing rulings and instructions of the court, and moved that the verdict returned for the plaintiffs be set aside.

*Bellows* and *Fletcher*, for the defendants.

There is no obligation, except by statute, that binds a town to support their poor, and in order to charge the town the statute must be strictly pursued. *Meredith* v. *Canterbury*, 2 N. H. 80.

The notice of the supplies should be signed by the overseers of the poor. Comp. Stat. 159, sec. 10. The notice in this case was signed by the selectmen as such, and not by the overseers of the poor. The statute must be construed strictly, and as the notice does not conform to the requisites of the statute, it is the duty of the court to pronounce it void. 2 N. H. 80.

Again, there is a variance between the notice and the allegation in the writ. The allegation in the writ that the notice was signed by the selectmen and overseers, is descriptive, and descriptive allegations are to be strictly proved. See the distinction between matters of allegation and description most clearly pointed out by *Royce*, C. J., in *Yates* v. *Bowker*, 23 Vt. 26 ; 2 Greenl. Ev., secs. 11, 12.

The case finds that a daughter and grand-daughter of Nancy Harding lived in the family of the paupers, and the supplies

were used in the family. Now it is difficult to understand how two of that family were paupers and the others not. The aid should have been asked for all, and all should have received it as paupers, or else they should not receive it at all. The statute does not contemplate that one of a family should be furnished as a pauper, and the rest of the family use the supplies in common with the paupers.

The statute provides that notice is to be given to the defendant town of the supplies furnished the paupers, and for whose use. How is it practicable to do this when the supplies are consumed in common by the paupers and others. The defendant town are to be notified of the sum expended for the paupers, so that they can pay it; not of the sum expended for the paupers and others, and then leave it to a jury to say what part of the supplies were consumed by the paupers. The notice must not include, in the sums expended for those who are paupers, expenses incurred for those who are not so. *Per Parker*, J., in *Barnstead* v. *Strafford*, 8 N. H. 143. See *Chichester* v. *Pembroke*, 2 N. H. 538.

The argument that it may be inconvenient to separate a family, does not alter the law.

The amount claimed as paid Robbins and wife was larger than the amount in fact paid, and for that reason the item should have been rejected altogether. The same remark may be made in regard to the amount paid for watching. The selectmen and overseers of the poor are to see that paupers are supplied in a prudent manner, and the court, we trust, will not sustain the way goods were furnished in this case, and then submit it to a jury to say how much was necessary for the support of the paupers, if supplied in a prudent manner. To give countenance to such a rule would encourage and foster litigation, and virtually repeal that portion of the statute requiring certainty as to the amount of supplies furnished the paupers, and claimed of the defendant town.

In regard to the settlement of Harding in Berlin, we contend that he had a settlement in Berlin by paying all taxes legally

Berlin *v.* Gorham.

assessed upon his poll for seven consecutive years. Comp. Stat. 157, sec. 1. The case finds that he was taxed for his poll for seven years, and that he paid all taxes legally assessed. See *Weare* v. *New-Boston*, 3 N. H. 203 ; *Benton* v. *Wakefield*, 4 N. H. 47 ; *Henniker* v. *Weare*, 9 N. H. 573.

*G. C. Williams*, for the plaintiff.

The law relating to the settlement of persons in towns newly incorporated, is an arbitrary rule, fixed solely to ascertain the liability of towns. Some point of time must, therefore, be taken to be meant, and the date of the incorporation is the true time, and most consonant with reason. The act of the legislature fixes the liability. It needs no ratification or acceptance on the part of the towns to fix the liability. They are then incorporated, and their liability fixed, whether they will or not. In this respect a public is different from a private corporation. It is not a residence during a continuous period of time, during which many things are to be done, which is necessary to bring one within its provisions, and absence at any one of which would exclude him. He must have resided *at some point of time* within the incorporated place, and residence *then* must give him a settlement. What other point could be taken than the act of incorporation ? No one would say that a person not resident then, but resident at the holding of the first meeting, gained a settlement. But the question is settled by authority in this State. In *Mason* v. *Alexandria*, 3 N. H. 303, the question submitted, as expressed in the words of the case, was whether a settlement was acquired by virtue of the act of incorporation ; and the court say expressly that all residents gained a settlement by virtue of the incorporation. So in *Salisbury* v. *Orange*, 5 N. H. 351, the language of the court is, that the pauper was an inhabitant at the time the place was incorporated, and gained a settlement by the act of incorporation, and in that case the date of the act is given as the date of the incorporation.

To the same effect are the authorities in Massachusetts. *Bath* v. *Bowdoin*, 4 Mass. 452 ; *Buckfield* v. *Gorham*, 6 Mass. 445 ; *Groton* v. *Shirley*, 7 Mass. 156.

The ruling of the court in regard to the supplies used in common by other members of the family, and as to part of Horner & Co's bill, because furnished injudiciously, seem to come under the same principle. The precise mode in which supplies may be furnished to paupers is not enjoined by statute or reason. It must vary in each particular case. Towns may not be compelled to separate the members of a family, but may judge it most prudent to furnish supplies within the family. The daughter in this case was able to render some assistance. The town could not prevent visitors eating at times, and the whole matter seems properly left to the jury, with the instructions of the court, to allow no more than was necessary for the support of the paupers in a prudent and proper manner. The instructions were similar in regard to the bill of Horner & Co., and in both seem entirely within the remarks of the court in *Barnstead* v. *Strafford*, 8 N. H. 144 : " If a town has expended extravagant sums in the relief of paupers, they will not be entitled to recover the whole sums paid, but may recover a reasonable proportion of the amount claimed."

The ruling of the court in regard to the bill of Robbins and wife, and as to watching, seems entirely within the very decision upon which the defendants rely for authority for rejecting the whole claim. *Barnstead* v. *Strafford*, before cited. The ground of the decision is, that fraudulent attempts on the part of the selectmen of a town to charge a larger sum than the real one incurred, they knowing them to be untrue, should be rebuked by disallowing the whole. The instance was so glaring in that case that the court could pass upon the notice as fraudulent upon its face. But the court in the same case remark, " If any thing can be recovered in any case, where the proof is that the amount is substantially less than that stated in the notice, it should only be in cases where it is shown that the variance arises from a mistake, and not from an attempt to swell the amount, in order to obtain larger sums for the benefit of the plaintiff town."

In this case the whole question of intention was submitted to the jury, under instruction similar to the doctrine laid down in

that case. If it were necessary, the attention of the court might be called to the smallness of the overstatement of Robbins' bill, and the $30 stated in the notice may be said to be correctly stated for the thirty days and the seven days subsequent, and, after the partial recovery of the pauper, to have been reduced from $7 to $5. It is the fraud in the notice, not the increased charge for services afterwards, that sustains an objection. The fact that throughout the notice every item is specified as paid, was an error in form, and could not have been fraudulent in *intention*, because it has frequently been decided that the town need not have *paid*, but only become liable therefor; and under the ruling of the court the plaintiffs have recovered nothing but what had been actually paid.

The objection to the sufficiency of the notice is, chiefly, that it is signed " Selectmen of Berlin," and not " Overseers of the Poor." All that can be pretended to be required is a strict compliance with the statute provisions. *Meredith* v. *Coventry*, 3 N. H. 80. The statute requires the notice to be signed by the overseers of the poor. These selectmen were overseers of the poor by virtue of their office, no overseers having been chosen. Rev. Stat., chap. 34, sec. 4; Comp. Stat. 106. This notice was in fact signed by the overseers of the poor, and the letter of the statute complied with. The statute does not require them to state themselves in the notice to be overseers of the poor. The question is then narrowed down to this, Was the notice, being signed " Selectmen of Berlin," sufficient to give information to the town of Gorham, so that they might reasonably presume that the signers were overseers of the poor? There can be no question of this, and it has been settled in Massachusetts and Maine. *Garland* v. *Brewer*, 3 Greenl. 197; *Adams* v. *Lunenburg*, 8 Pick. 563; *Powers* v. *Weare*, 2 Pick. 451; *Dover* v. *Deer Island*, 15 Maine 169. The cases of *Garland* v. *Brewer*, and *Adams* v. *Lunenburg*, seem precisely in point. As to variance I see none, for the proof corresponds to the allegation, that the notice was in fact signed by a majority of the selectmen and overseers of the poor.

The rule contended for by the defendants, in relation to gaining a settlement by being assessed and having paid taxes for seven years, if carried out will amount to this, that a person residing in a town seven years, if by some error or informality in the raising or assessing taxes, no legal tax was assessed during the whole time, his simple residence in town without paying any thing will gain for him a settlement. The mere statement of the proposition would seem to show its absurdity. It is well settled that he must be taxed upon his poll for the seven years, and that the statute intended that the selectmen should have the power and privilege of not assessing him, if they chose, for the purpose of *preventing* his gaining a settlement. *Weare* v. *New-Boston*, 3 N. H. 203 ; *Benton* v. *Wakefield*, 4 N. H. 47 ; *Henniker* v. *Weare*, 9 N. H. 573. And it is equally well settled that he must have paid the taxes legally assessed. *Jaffrey* v. *Cornish*, 10 N. H. 511 ; *Lisbon* v. *Bath*, 1 Foster 319.

If the town had omitted to tax at all, through mistake, there would be no doubt that a settlement would be prevented. Does the town stand worse, if they have made no valid taxation ? Is not the making an invalid taxation throughout the same as making no taxation at all ? And must not the defendant take one horn or the other ; either that the pauper has been legally taxed seven years upon his poll, and has paid those taxes, or that he has not been taxed at all ?

BELL, J. By the statute of 1828, (Laws, Ed. 1830, p. 301,) relating to the settlement of paupers, which is reënacted without material change in the Revised Statutes, ch. 65, sec. 1, cl. 6, (Comp. Stat. 157,) " all persons, dwelling and having their homes in any unincorporated place at the time when the same shall be incorporated into a town, shall thereby gain a settlement therein." It was objected that to make an incorporation of a town effectual, there must be a legal town meeting holden in it ; and as the pauper, though he resided in the town at the passage of the act, removed before any meeting was holden, he did not gain a settlement. This objection rests upon the

Berlin *v.* Gorham.

idea that the rule which applies in the case of private corporations, that the act is ineffectual until it is accepted by the corporators, governs also the case of public corporations, like towns. See A. & A. on Corp. 68.

But there is no such rule in the case of public corporations of a municipal character. The acts of incorporation are imperative upon all who come within their scope. Nothing depends upon consent, unless the act is expressly made conditional. No man who lives upon the incorporated district can withdraw from the corporation, unless by a removal from the town ; and by the mere passage of the law the town is completely constituted, entitled to the rights and subjected to the duties and burdens of a town, whether the inhabitants are pleased or displeased. The legislature has entire control over municipal corporations, to create, change or destroy them at pleasure, and they are absolutely created by the act of incorporation, without the acceptance of the people, or any act on their part, unless otherwise provided by the act itself. *The People* v. *Wren*, 4 Scam. 269 ; *Warren* v. *Mayor, &c., of Charlestown*, 2 Gray 104 ; *Mills* v. *Williams*, 11 Ired. 558 ; *The State* v. *Curran*, 7 Eng. 321 ; *Fire Department* v. *Kip*, 10 Wend. 267 ; *The People* v. *Morris*, 13 Wend. 337.

By the Revised Statutes, ch. 34, sec. 4, (Comp. Stat. 106,) " any town may choose by major vote one or more overseers of the poor, &c. If such overseers are not chosen, the selectmen shall discharge the duties and have the powers of those officers." It appears that no overseers were chosen in Berlin, and the notice was signed by the selectmen, with the addition merely of " Selectmen of Berlin." It is objected, that no overseers being chosen, it was necessary it should be signed by the selectmen as overseers. The provision of the Revised Statutes relative to notice is, that " no action shall be sustained against any town or person chargeable, &c., unless a notice in writing, signed by the overseers of the poor, stating the sums so expended, shall first have been given to such town or person." This provision, it is said, should be construed strictly, and the notice be held void, because it was not signed by the selectmen as overseers. But

we do not understand that any such principle has ever been adopted here. In most of our towns no overseers are chosen, and the duties of overseers of the poor are a part of the ordinary duties of the selectmen. It has, so far as we are aware, never been usual for the selectmen to sign such notices as overseers, or as selectmen and overseers, but merely as selectmen; and no motive of convenience or policy requires any change.

But it is said there is a variance between the notice as produced and that alleged in the writ; that the allegation is descriptive of the notice, and therefore the difference in the addition to the signatures is material. It seems to us, however, that the allegation is descriptive rather of the official character of its signers than of the notice. It is not necessary to state the terms of a writing, if its legal effect is stated, and the legal effect of the word selectmen was in this case selectmen and *ex officio* overseers of the poor, just as it is alleged in the declaration. The ruling of the court on this point seems to us to have been correct. The cases cited for the plaintiff are in point to support it.

It is objected, that a daughter and grand-daughter of one of the paupers lived in his family, and the supplies were used in the family. It is said these supplies should be charged for all, if all were paupers, and otherwise if furnished for the paupers alone. This seems to us, as it was regarded by the court, as a mere question of fact and not a matter of theory. Cases may be supposed where a small amount of aid may enable a family to support a sick and destitute member. A person who is sick may need a nurse, the nurse must be paid and boarded; supplies for the nurse are supplies for the sick person. A sick woman's family consists of a daughter and her child. The daughter is willing and desirous to act as nurse, but she cannot board herself and child, while she is doing so. Supplies furnished for such a family are as truly necessaries for the sick person, as food or medicine for herself. The situation of the sick admits of such infinite varieties that no arbitrary rule can be laid down. The plaintiff must satisfy the jury that the

amount and kind of supplies, under all the circumstances, were suitable and proper. The cases cited by the plaintiff are not in conflict with this view. In *Barnstead* v. *Strafford*, pay of two nurses was charged without objection, and it cannot be open to doubt that if supplies were furnished for the board of the paupers and the nurses, the charges would be equally proper to be allowed. The charges for nursing and watching fall under the same rule. If extravagant amounts of supplies were furnished, or high prices paid, the town can recover what ought reasonably to have been expended. If no more than was reasonable was furnished, or if the proper amount can be ascertained, the town will not be barred from recovering because the most discreet mode of administering the supplies was not adopted.

Where there was a controversy whether the plaintiffs had not charged for money which they had neither paid nor become liable to pay, the ruling of the court seems to have been reasonable in itself, and consistent with the case before referred to. If the charge was intentionally made too large, it was to be rejected, but if it was done by mistake, or without a fraudulent object, the whole was not to be rejected, but the sum justly due might be recovered. It is always in the power of the defendant town by a confession to throw the risk of a trial, in regard to items deemed extravagant, upon the plaintiffs.

The pauper was assessed for his poll seven years in Gorham. In one or more of those years the tax was illegally assessed, and was not paid. If part of the taxes is illegal it is enough to pay the balance. *Lisbon* v. *Bath*, 1 Foster 319. To gain a settlement by taxation on the poll alone, the party must reside in the town, *and* being taxed for his poll for seven years in succession, must have paid all taxes legally assessed on his poll and estate during said term. As the illegal tax was not paid, the only question is, whether, if a party is illegally taxed, that is *being taxed* within this statute. An illegal tax may be a nullity, absolutely void, no tax at all in law, or it may be a voidable tax, invalid; one which a party may refuse to pay, if he pleases, but

which if he pays he cannot reclaim his money. The case says it was not duly and legally assessed. This language points to a defect in the assessment, not in the power to assess; to a voidable rather than a void tax; in which case there would be a tax and a failure to pay, and therefore no settlement gained. Or the tax being avoidable was actually avoided, so that the party could not be regarded as being taxed for seven years in succession, and consequently gained no settlement.

*Judgment on the verdict.*